

U.S. Department of Justice

United States Attorney
Eastern District of New York

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 9, 2023

**By ECF**

The Honorable Sanket J. Bulsara
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: *James Price, et al. v. U.S. Prob. & Pretrial Servs., EDNY*,
      No. 22-cv-7221 (Gujarati, J.) (Bulsara, M.J.) (E.D.N.Y.)

Dear Magistrate Judge Bulsara:

  This Office represents Defendant U.S. Probation Office for the Eastern District of New York ("Defendant" or, alternatively, "U.S. Probation Office") in the above-referenced action commenced by Plaintiffs *pro se* James Price and Sherry Price pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-06 (the "APA"). On February 23, 2023, the Court "direct[ed] Defendant . . . to either file a letter explaining why the motion seeking to extend time to answer was not late . . . or to file a motion that explains why, under the standards set forth in *Enron Oil Corp. v. Diakuhura*, 10 F.3d 90, 96 (2d Cir. 1993), a belated answer is permissible, and why a default should not be entered" by March 9, 2023. *See* Feb. 23, 2023 Minute Entry. Defendant respectfully writes, pursuant to the February 23, 2023 Order to assert that: (1) Defendant's motion to extend its time to answer, move, or otherwise respond to the Complaint was timely; and (2) in the alternative, even if the Court were to deem Defendant's motion untimely, under the standards set forth in *Enron Oil*, the Court should decline to enter default under Rule 55(a).

  **I.**  **Relevant Background**

  By way of background, Plaintiff James Price, who is currently incarcerated at Federal Correctional Institution, Miami ("FCI Miami") in the Southern District of Florida, alleges that he is married to Plaintiff Sherry Price, who is alleged to reside in the Eastern District of New York ("EDNY"). *See* Compl. ¶¶ 3-4. Plaintiff James Price submitted a request to have the location of his supervised release transferred from the Southern District of Florida to the EDNY, which the U.S. Probation Office allegedly denied. *See id.* ¶ 8, Plaintiffs now seek, pursuant to the APA, "entry of an order to set aside the [U.S. Probation Office's] decision and order the transfer of [Plaintiff James] Price's supervised release to the [EDNY]." *See id.*, at 7.

  The records maintained by this Office reflect that this Office received the Complaint on December 5, 2022. Under Federal Rule of Civil Procedure ("Rule") 12(a)(2), which allows federal defendants sixty days to respond, the government's deadline to answer, move of otherwise respond was February 3, 2023.

On February 2, 2023, this Office sought an extension of time to answer, move, or otherwise respond to the Complaint to March 23, 2023.[1] *See* ECF No. 5. In that correspondence, this Office represented that the undersigned was unable to speak with either Plaintiff to obtain consent for that request because one Plaintiff was incarcerated, and the other failed to include contact information that would facilitate contemporaneous communication (i.e., a telephone number or an email address) on the docket sheet. *See* ECF No. 5. On February 3, 2023, the Court granted Defendant's request for an extension of time to respond to the Complaint by March 23, 2023. *See* Feb. 17, 2023 Minute Entry.

On February 17, 2023, Plaintiffs filed a document styled "Motion Requesting the Reversal of Magistrate's [*sic*] Decision Granting Extension of Time to the Defendants," which requested "reconsider[ation] [of the Court's] decision in granting the Defendant's Letter Motion for Extension of Time," as well as the grant of "an Order for the reversal of the extension of time." *See* ECF No. 6, at 1, 7.[2] Plaintiffs submitted several certified mail receipts in connection with their motion, including one which purports to show that this Office was served with a parcel of mail addressed to this Office, and that that tracking indicates that the associated parcel was marked as having been "picked up" on December 1, 2022. Apparently based on this documentation, Plaintiffs now argue that Defendant's request for an extension of time was untimely.

On February 23, 2023, the Court denied Plaintiffs' motion for reconsideration, and affirmed that "[t]he deadline for Defendant to answer, move, or otherwise respond to the Complaint remains [March 23, 2023]." *See* Feb. 23, 2023 Minute Entry. However, the Court noted that "Plaintiffs assert in their motion that the Complaint was served on [December 1, 2022]," and

---

[1] In that letter, the undersigned unintentionally miscalculated the response deadline by several days. More specifically, an inadvertent clerical error led the undersigned to believe that this Office had been served on December 7, 2022, such that the response date for Defendant would fall on February 6, 2023, This is because sixty days from that date fell on Sunday, February 5, 2023, such that the undersigned calculated the deadline to respond as Monday, February 6, 2023. *Cf.* Fed. R. Civ. P. 6(a)(1)(C) (stating that when a deadline falls on a "Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." *See id.* However, as set forth in more detail below, it appears that this Office received the Complaint on December 5, 2022 (not December 7, 2022). Although this would not affect the timeliness of Defendant's motion for an extension of time pursuant to Rule 12(b)(2), the undersigned sincerely regrets the erroneous assertion – which the undersigned has only just discovered in crafting this submission – and any confusion or inconvenience this error may have caused the Court or Plaintiffs.

[2] Plaintiffs' February 17, 2023 filing also misrepresents Plaintiffs' efforts to contact the undersigned. For example, Plaintiffs allege that: (1) "[o]n or about late December 2022 through early January 2023, *phone contact was made* with [the undersigned] . . . providing contact information," *see* ECF No. 6, ¶ 4, that "[o]n February 2, 2023, an attempt was made to contact [the undersigned] by phone, leaving a voice message containing contact information," *see* ECF No. 6, ¶ 5; and (3) "[w]ith each attempt to contact [the undersigned] by telephone, a voice message was left . . . ." *See* ECF No. 6, ¶ 6. None of this is accurate.However, the undersigned first spoke with Plaintiff James Price on February 28, 2023 (over a week and a half *after* Plaintiffs filed their motion) when he called from a phone number affiliated with FCI Miami. And the first time that the undersigned received written correspondence from Plaintiff Sherry Price directly was on March 8, 2023 when she made contact by email. However, the undersigned notes that in or around early January 2023, he received a call from an unidentified person inquiring about this matter; the undersigned responded but did not engage in substantive communication with this unidentified person as his connection with the case was unclear. Then, on February 3, 2023 – *after* filing Defendant's February 2, 2023 letter motion for an extension of time – the undersigned also received a voicemail from an unidentified caller who left a phone number, but failed to identify himself as either Plaintiff, or as an attorney or a guardian *ad litem* for either Plaintiff. As of this writing, this Office has been unable to ascertain that individual's identity or connection with this matter.

accordingly directed Defendant "to either file a letter explaining why the motion seeking to extend time to answer was not late . . . or to file a motion that explains why, under the standards set forth in *Enron Oil* . . . , a belated answer is permissible, and why a default should not be entered" by March 9, 2023." *See* Feb. 23, 2023 Minute Entry.

## II. Defendant's Motion to Extend Time to Respond to the Complaint Was Submitted Timely (or at Worst, Inadvertently a Few Days Late)

Defendant respectfully submits that their February 2, 2023 motion to extend time to respond was submitted timely. By way of background, the United States and its agencies have sixty days from service to respond to a complaint. *See* Fed. R. Civ. P. 12(a)(2). Rule 12(a)(2) applies in most cases (including this one), and by the plain terms of the Rule 12(a)(2), the sixty-day period does not start until the U.S. Attorney's Office is served. The date of service on the U.S. Attorney's Office for purposes of Rule 12(a)(2) is the date that the office *received* the documents. *See Fox v. USPS*, No. 19-1450, 2019 WL 8619622, at *3 (6th Cir. Oct. 30, 2019) (stating that "the USPS received the certified mail on March 26 and the United States Attorney received it on March 27. The defendants therefore had sixty days after those dates within which to respond," and also affirming district court's denial of a motion for default judgment with reference to Rule 55(d)); *see also Reed v. Comm'r of Soc. Sec.*, No. 18-11431, 2020 WL 2836307, at *4 (E.D. Mich. May 31, 2020) (calculating date of service from date of receipt in U.S. Attorney's office, noting that "[t]he Commissioner has demonstrated that Reed *served* the United States Attorney for the Eastern District of Michigan on January 9, 2019—the date that the office *received* the summons and complaint") (emphasis added) (citing *Fox*, 2019 WL 8619622, at *3).

The undersigned reasonably believes, based on the records maintained by this Office, that this complaint was not received from Plaintiffs until December 5, 2022, which would have given Defendant until February 3, 2023 to respond to the Complaint. Here, Defendant filed its letter seeking an extension on February 2, 2023 timely. *See* ECF No. 2.

Further, to the extent that this Office was not served Monday, December 5, 2023 but instead on Thursday December 1, 2023 as implied by Plaintiffs' submissions – such that its response date would be January 30, 2023 (a few days prior to the February 2, 2023 motion for an extension of time) – Defendant respectfully submits that any delay on its part was inadvertent as this Office's internal records reflected otherwise. It is possible that this Office record was in error, but the undersigned reasonably relied on it. Further, Plaintiffs have a share in the three-business day delay, if there was one, by failing to file a certificate of service promptly, and indeed not until long after any response deadline had long since passed. *See* ECF No. 6, at 18-21.  A plaintiff's failure to provide proof of service pursuant to Rule 4(*l*)(1) means that a defendant is not alerted to a potential issue – for example, that a plaintiff deemed service complete on a different day. *Cf. Sutter v. Dibello*, No. 18-cv-817, 2021 WL 930459, at *9 (E.D.N.Y. Mar. 10, 2021) (Feuerstein, J.) ("Rule 4(*l*)(1) . . . provides that . . . 'proof of service must be made to the court . . . by the server's affidavit.' . . . Although failure to prove service does not affect the validity of service, if plaintiff had complied with her obligation to file proof of service, defendants would have been alerted to the fact that she deemed service [upon a particular party] complete at that time.").

### III.     An Entry of Default Would Be Inappropriate Under *Enron Oil*

Even were the Court to conclude that this Office inadvertently erred by a few days as to its response time, a default, especially against a federal defendant is not warranted.

As an initial matter, Defendant respectfully submits that the focus on *Enron Oil* jumps past an important additional hurdle where, as here, the defendant is a federal defendant. Rule 55(d) sets forth a bar that a plaintiff must surmount when the alleged defaulting party is the United States, its agencies, or its officers: Default is proper "only if the claimant establishes a claim or right to relief by evidence that satisfies the court." Fed. R. Civ. P. 55(d). It is insufficient for the entry of default to point to a delay of, at most, a few days without establishing the merits. *Carabali-Ruiz v. United States*, No. 09-cv-5511, 2012 WL 1372252, at *1 (E.D.N.Y. Apr. 19, 2012) (Garuafis, J.) (declining, pursuant to Rule 55(d), to enter default judgment against the United States for untimely filings).

Even when the allegedly defaulting party is not as here, the head of a federal agency, but a private party, defaults are strongly disfavored. The Second Circuit has often stated its preference for "resolving disputes on the merits" because defaults are "extreme measures [that] should be reserved by a trial court as a final, not a first, sanction imposed on a litigant." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993); *see also Wildflower + Co., Inc. v. Mood Apparel, Ltd.*, 338 F.R.D. 192, 195 (S.D.N.Y. 2021) (citing *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)) (citing the "Second Circuit's 'strong preference for resolving disputes on the merits'"). Courts within this circuit, citing *Enron Oil,* set forth three factors to consider in determining whether to permit a belated answer: (i) whether the failure to respond was willful; (ii) whether permitting a defendant to answer will prejudice the plaintiff; and (iii) whether the responding defendant can proffer a meritorious defense. *Wildflower + Co., Inc.* 338 F.R.D. at 195 (citing *Enron Oil Corp.*, 10 F.3d at 96). As to the third factor, to "make a sufficient showing of a meritorious defense, necessary to establish good cause – the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense." *Wildflower + Co., Inc.*, 338 F.R.D. at 198. "The defaulting defendant to avoid default 'need only meet a low threshold to satisfy this factor." *Id.* (citation omitted); *accord Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48, 56 (E.D.N.Y. 2008) (Seybert, J.) (citation omitted) ("Likelihood of success is not the measure. [Plaintiffs'] allegations are meritorious if they contain 'even a hint of a suggestion' which, if proven at trial, would constitute a complete defense."). By contrast, to *secure* a default judgment against a *federal* defendant, as here, Plaintiffs must meet the extremely high standard under Fed. R. Civ. P. 55(d) of having "established a claim or right to relief." All three factors militate against default.

Here, the meritorious defense factor weights heavily in Plaintiff's favor. Not least, Plaintiffs have not cited a sovereign immunity waiver permitting them to bring this APA suit. "It is . . . axiomatic under the principle of sovereign immunity that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004). Section 702 of the APA embodies a limited waiver of sovereign immunity by conferring an entitlement to judicial review when "[a] person suffer[s] legal wrong because of *agency* action, or [is] adversely affected or aggrieved by *agency* action within the meaning of a relevant statute." *See* 5 U.S.C. § 702 (emphasis added). Notably, "the

courts of the United States" are expressly excluded from the definition of "agency." *See id.* § 701(b)(1)(B); *see also Pena v. U.S. Dep't of Prob.*, No. 06-cv-2481, 2006 WL 2806383, at *1 (E.D.N.Y. Sept. 28, 2006) (Gershon, J.) ("It is clear that Congress intended the entire judicial branch of the Government to be excluded from the provisions of the [APA].") (alteration omitted) (quoting *In re Fidelity Mortg. Investors*, 690 F.2d 35, 38 (2d Cir. 1982)). The U.S Probation Office is legally an arm of the judiciary. *United States v. Reyes*, 283 F.3d 446, 455 (2d Cir. 2002) (noting, in an opinion addressing a district court's denial of a criminal defendant's suppression motion, that "since the United States Probation Office is established pursuant to the direction of Congress as an arm of the United States District Court, it is reasonable to view the United States Probation Office itself as a legally constituted arm of the judicial branch") (cleaned up) (quoting *United States v. Inserra*, 34 F.3d 83, 88 (2d Cir. 1994)); *see also* 18 U.S.C. § 3602(a).

Indeed, because it is an arm of the judiciary, courts confronted with the applicability of the APA to the U.S. Probation Office have routinely found that latter entity is exempt from the statute. *See AmSouth Bank v. Miss. Chem. Corp.*, 465 F. Supp. 2d 1206, 1210 (D.N.M. 2006) (holding that waiver of sovereign immunity did not extend to the U.S. Probation Office because it is part of the judicial branch); *Matrajt v. U.S. Prob. Office for W. Dist. of Pa.*, No. 20-cv-1660, 2021 WL 4264883, at *8 (W.D. Pa. Sept. 20, 2021) ("[A]lthough the [APA] waives sovereign immunity to allow for claims of injunctive relief against federal agencies[,] . . . the definition of 'agency' in this waiver expressly excludes the federal courts, and as such, the [U.S. Probation Office]."); *Robbins v. U.S. Prob. Office for Dist. of Minneapolis*, No. 20-CV-1918-LRR, 2021 WL 1255402, at *4 (D. Minn. Mar. 18, 2021) ("The APA . . . is inapplicable to the [U.S. Probation Office], an arm of the judicial branch, because the court system itself has been excluded from the terms of the APA, and this exclusion extends to the judicial branch generally.") (internal quotation marks omitted); *cf. also Pickus v. U.S. Bd. of Parole*, 507 F.2d 1107, 1112 (D.C. Cir. 1974) (stating in dicta that the court "f[ound] unpersuasive an argument of the [U.S. Board of Parole] that it is exempt because the Probation Service is exempt" from the APA because the latter's exemption applied as a result of "its status as an auxiliary of the courts, which, unlike agencies of the executive branch, are specifically excluded").[3]

This easily meets the "low threshold" for the meritorious defense criteria, *Wildflower + Co., Inc.*, 338 F.R.D. at 198, and concomitantly, at a minimum bars Plaintiffs from "establishing their claim to relief" as they must do as to a federal agency defendant under Rule 55(d). *See Pall Corp.*, 249 F.R.D. at 57 (finding defendant had shown "meritorious defense" sufficient to defeat entry of default, "bearing in mind that the evidence presented by [defendant] need only provide 'a hint of a suggestion' of a complete defense," such that "[the court] f[ou]nd that the defenses offered by [defendant] are 'potentially viable' "). For these reasons, alone, entry of default is unwarranted. *See Luya Liu v. Bureau of Citizenship and Immig. Servs.*, 318 F. Appx. 21, 23 (2d Cir. 2009) (affirming, pursuant to Rule 55(d), district court's denial of plaintiff's motion for entry of default judgment against federal agency); *Carabali-Ruiz v. United States*, No. 09-cv-5511, 2012 WL 1372252, at *1 (E.D.N.Y. Apr. 19, 2012) (Garaufis, J.) (declining, pursuant to Rule 55(d), to enter default judgment against federal government for untimely filings); *Enron Oil Corp.*, 10 F.3d at 96 (citation omitted) (noting that, "when doubt exists as to whether a default should be granted . . . the doubt should be resolved in favor of the defaulting party").

---

[3] Defendants do not waive, and specifically preserve, all of their additional defenses, not least ripeness.

Were Plaintiffs able to surmount the high hurdle of Rule 55(d), and also were Defendants able to surmount the low threshold for the "meritorious defense" *Enron Oil* factor, Plaintiffs would still be unable to establish the other two factors. As shown above, Defendant's response was timely, but in any event the few days disparity between a tracking number and this Office's records was not "willful" failure to respond. "Willfulness . . . 'requires something more than mere negligence, such as egregious or deliberate conduct.' " *Swarna v. Al-Awadi*, 622 F.3d 123, 142 (2d Cir. 2010) (quoting *New York v. Green*, 420 F.3d 99, 108 (2d Cir. 1995); *see also Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (finding that failure to answer a complaint due to a law clerk's filing mistake was not "willful").

Equally failing to satisfy the *Enron Oil* factor, is the lack of prejudice involved in at worst, a few days of inadvertent delay, for seeking an extension of time to respond to the Complaint. "[D]elay standing alone does not establish prejudice." *Enron,* 10 F.3d at 98; *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983). "Real prejudice is evidenced by the loss of evidence, the unavailability of witnesses or roadblocks to discovery." *Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 993 (E.D.N.Y. 1995) (Spatt, J.). To establish prejudice at this early stage in the litigation, before discovery has commenced and when "there is no suggestion that evidence has been lost or destroyed, witnesses have become unavailable or lost their memory regarding pertinent events, or opportunities for fraud ha[ve] ensued," would require "extraordinary circumstances." *Int'l Reformed Univ. & Seminary v. Newsnjoy USA*, No. 13-cv-3156, 2014 WL 923394, at *5 (E.D.N.Y. Mar. 10, 2014) (Brown, M.J.) (finding no prejudice to plaintiff when defendant promptly challenged entry of default, granting a motion to vacate entry of a certificate of default, and denying plaintiff's motion for a default judgment). Plaintiffs have made no such showing (nor could they); rather, permitting Defendant to respond will move the parties towards resolution of this action on the merits.

In sum, no default is warranted against a federal defendant under Rule 55(d), and in any event each of the *Enron* factors would support Defendant's request to proceed to defend this suit.

Defendant thanks the Court for its consideration of this matter.

                                                                            Respectfully submitted,

                                                                            BREON PEACE
                                                                            United States Attorney
                                                                            *Attorney for Defendants*

By:    /s/ *David A. Cooper*
           DAVID A. COOPER
           Assistant U.S. Attorney
           (718) 254-6228
           david.cooper4@usdoj.gov

cc: **By Certified Mail (including copies of unpublished authority under Loc. Civ. R. 7.2)**
James Price
15801 SW 137th Avenue
Miami, FL 33177

Sherry Price
243-10 138th Avenue, Apt. # 2F
Rosedale, NY 11422
*Plaintiffs* pro se